**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

KILINA JELLEL, et al.,          )        CASE NO. 5:25-cv-1021
                                  )
                                  )
PLAINTIFFS,            )        CHIEF JUDGE SARA LIOI
                                  )
                                  )
vs.                      )        **MEMORANDUM OPINION**
                                  )        **AND ORDER**
                                  )
EDWARD J. ELUM, et al.,        )
                                  )
                                  )
DEFENDANTS.          )

*Pro se* plaintiffs, Kilina Jellel and Darlene Jellel, filed an eighteen-count action against Massillon Municipal Court Judge Edward J. Elum ("Judge Elum"); Massillon City Prosecutor, Bailey Ricci ("Ricci"); Massillon Law Director Justin Richard ("Richard"); Massillon City Victim Advocate Rachel Irwin ("Irwin"); Massillon Municipal Court Clerk Supervisor Angela Clifford ("Clifford"); Massillon Municipal Court Chief Deputy Clerk Shane Jackson ("Jackson"); the City of Massillon; and Massillon Police Officers Dexter, Bernard, and Anderson. (*See* Doc. No. 3 (Amended Complaint).) For the reasons discussed herein, plaintiffs' allegations fail to invoke this Court's subject matter jurisdiction, and, therefore, the amended complaint is dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

In this civil rights action, plaintiffs allege a host of constitutional violations stemming from defendants' conduct during a state criminal prosecution against Samuel Beall ("Beall"). (*See* Doc.

No. 3-4 (Municipal Court Entry and Order in *State v. Beall*), at 1.[1]) Beall was charged with misdemeanor "criminal damaging" of Darlene Jellel's garden. (*Id.*) He was ordered by Judge Elum to pay $99.00 in restitution to Darlene Jellel. (Doc. No. 3-5 (Exhibits), at 1 (Clerk's Office letter confirming receipt of restitution payment from Beall).)

During the Beall prosecution, the Massillon Municipal Court "received various documents and three flash drives from Kilina Jellel, who [was] not a party or victim" to the case. (Doc. No. 3-4, at 1.) Judge Elum concluded that Kilina Jellel lacked standing in the case, and that her "documents & flash drives [were] frivolous [sic] and not supported by the evidence." (*Id.* at 1.) The court also found that Kilina Jellel was practicing law without a license and referred the matter to Richard for further review. (*Id.*)

Plaintiffs' amended complaint is difficult to decipher. It asserts eighteen separate federal claims, including numerous violations of the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. (*See generally* Doc. No. 3.) For relief, plaintiffs seek a declaratory judgment, compensatory damages of $10,000,000, punitive damages, and an injunction. (*See* Doc. No. 3 ¶¶ 93–106.)

Plaintiffs also filed a series of motions, including a motion for a temporary restraining order ("TRO") (*see* Doc. No. 5),[2] which the Court denied for failure to comply with Fed. R. Civ. P. 65(b)(1), and a motion for "Immediate Removal of Unauthorized Magistrate Referral" (*see* Doc. No. 6), which was denied because no magistrate referral ever took place. (Doc. No. 7 (Order); Order [non-document], 6/2/2025.)

---

[1] Page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] The TRO was challenging to comprehend. Plaintiffs alleged that, on May 11, 2025, Kilina Jellel was ticketed by a Columbiana County police officer for texting while driving. (Doc. No. 5, at 5.) According to plaintiffs, the officer "claimed Kilina was holding her phone in her left hand without verifying if she was texting—she was not. Kilina, who signs with her left hand—a detail likely known through surveillance, as over 90% of people are righthanded—never holds her phone in her left hand or talks with her left ear, immediately signaling the stop was targeted." *Id.*

## II.     STANDARD OF REVIEW

*Pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam), but the lenient treatment generally accorded *pro se* pleadings "has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). To avoid dismissal, even *pro se* complaints must meet basic federal pleading requirements and set forth allegations sufficient to state a plausible claim for relief. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted).

Because district courts have limited jurisdiction, a district court may *sua sponte* dismiss a complaint at any time pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479–480 (6th Cir. 1999) (finding plaintiff's claims lacked "the legal plausibility necessary to invoke federal subject matter jurisdiction" (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974))). Faced with such a pleading, the district court may dismiss a fee-paid complaint and "need not afford the plaintiff an opportunity to amend[.]" *Forbush v. Zaleski*, 20 F. App'x 481, 482 (6th Cir. 2001) (upholding *sua sponte* dismissal of a complaint under *Apple v. Glenn* because the named defendant, a state court judge, was entitled to absolute judicial immunity (citing *Hagans*, 415 U.S. at 536–37)); *see also Zareck v. Corr. Corp. of Am.*, 809 F. App'x 303, 305 (6th Cir. 2020) (recognizing *sua sponte* dismissal is appropriate where a plaintiff's claims "present no Article III case because there is no room for the inference that the question[s] sought to be raised can be the subject of controversy" (citation omitted)).

## III.     DISCUSSION

Plaintiffs' amended complaint warrants *sua sponte* dismissal under *Apple v. Glenn* because its allegations are "devoid of merit" and therefore fail to invoke the Court's subject matter

jurisdiction. 183 F.3d at 479; *see Hagans*, 415 U.S. at 536–37 (finding that frivolous, attenuated, or unsubstantial claims divest the district court of jurisdiction under Fed. R. Civ. P. 12(b)(1)) (collecting cases); *see also Hall v. Creech*, 17 F. App'x 270, 271 (6th Cir. 2001) (affirming dismissal under *Apple v. Glenn* in part because plaintiffs did not state a viable constitutional claim). Plaintiffs' Counts pertain either to defendants' functions and duties in the Beall state criminal prosecution, for which they receive absolute immunity, or fail to state viable constitutional claims. The claims thus do not provide adequate basis for the Court's jurisdiction. *Apple,* 183 F.3d at 479. The Court addresses the allegations against each of the defendants in turn.

### A.      Claims Against Judge Elum

 "It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) (citation and quotation marks omitted). Judicial immunity from damages can be overcome only by showing that a judge's challenged action was "nonjudicial," or that the judge acted "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). Plaintiffs' amended complaint does not allege either of these circumstances.

In Counts 2, 3, 4, 8, 9, 12, 13, 14, 15, 17, and 18, plaintiffs aver that Judge Elum violated their constitutional rights during the course of the state court criminal action by: signing a judicial order determining that Kilina Jellel engaged in unauthorized practice of law (Doc. No. 3, at 24); signing the "contradictory" unauthorized practice of law judgment (*id.* at 24);[3] authorizing a referral of whether Kilina Jellel engaged in the unauthorized practice of law to the law director (*id.*

---

[3] Though the Court makes no determination on Judge Elum's finding that Kilina Jellel engaged in unauthorized practice of law (Doc. No. 3-4, at 1), the Court notes that, in Ohio, unauthorized practice of law is a criminal offense. *See* Ohio Rev. Code § 4705.07. Therefore, to the extent plaintiffs advance a Section 1983 collateral attack on Judge Elum's finding—and to the extent his finding constitutes a binding, criminal judgment—plaintiffs are likely barred from relief under *Heck v. Humphrey.* 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (finding defendant cannot claim damages under Section 1983 for an allegedly unconstitutional conviction without first showing that the conviction has been reversed and exhausting state court remedies before the Section 1983 action is brought).

at 25); "suppressing testimony, excluding Darlene from proceedings, revoking Kilina's victim status, and showing bias by addressing the defense attorney as 'Kara'" during trial (*id.* at 28); failing to redact or remedy prosecutor Ricci's utterance of plaintiffs' social security number(s) at trial (*id.* at 29); issuing "intimidating rulings" (*id.* at 31–32); advising Beall that his conviction could be "expunged in one year" without first notifying or consulting plaintiffs (*id.* at 31); intimidating plaintiffs "with statements like 'sit down and be quiet' and 'pissing match,' and showing favoritism towards defense counsel (*id.* at 32); "secretly" stripping Kilina Jellel of her victim status in the case against Beall (*id.* at 33); allowing 73 days to elapse between Beall's offense and his pretrial conference (*id.* at 34); and giving plaintiffs "a false sense of inclusion" in trial proceedings before suppressing their testimony and "setting up conditions to eliminate their legal voice." (*Id.* at 35.)

These allegations indisputably relate to Judge Elum's performance of a core judicial function in adjudicating *State v. Beall*. He is entitled to judicial immunity, *Leech*, 689 F.3d at 542, and plaintiffs' dissatisfaction with his rulings and actions are insufficient to overcome that immunity. *See Mireles*, 502 U.S. at 12–13 ("If judicial immunity means anything, it means a judge will not be deprived of immunity because the action [] was in error or was in excess of his authority." (cleaned up)). Plaintiffs' federal claims against Judge Elum warrant dismissal. *See Blue*, 2020 WL 2747964, at *2 (dismissing claims against state municipal judge over the performance of his judicial duties under *Apple v. Glenn*).

### B.    Claims Against Prosecutor Ricci and Law Director Richard

"State prosecutors are absolutely immune from civil liability [for damages] when acting within the scope of their prosecutorial duties." *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). The "analytical key to prosecutorial immunity . . . is *advocacy*—whether the actions in question are

those of an advocate." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (emphasis in original). If so, a prosecutor is immune even for conduct such as "the knowing use of false testimony and the suppression of material evidence at [a] criminal trial." *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (citation omitted).

### i.   *Allegations relating to Ricci's duties as an advocate*

Most of the facts giving rise to the ten claims against Ricci directly relate to the duties she performed as an advocate during the adjudication of the case against Beall. For example, in Count 5, plaintiffs allege that Ricci engaged in prosecutorial misconduct by "coercing Darlene Jellel on February 18, 2025, to limit testimony[.]" (Doc. No. 3, at 26.) Likewise, Counts 15 through 18 detail Ricci's conduct in "secretly stripping [Kilina's] victim status" in the case against Beall (*id.* at 33), "potentially concealing Kilina's victim status stripping" (*id.* at 33), and giving plaintiffs "a false sense of inclusion" in the proceedings against Beall. (*Id.* at 35.)

Because these and similar allegations concern Ricci's role as an advocate—presenting the state's case against Beall—Ricci is entitled to prosecutorial immunity as to Counts 5, 8, 9, 15, 16, 17, and 18. *See Ford v. O'Malley*, No. 1:25-cv-517, 2025 WL 1192868, at *2 (N.D. Ohio Apr. 24, 2025) (dismissing fee-paid *pro se* litigant's claims against state prosecutor under *Apple v. Glenn* because prosecutor had absolute prosecutorial immunity).

### ii.   *Allegations relating to Ricci and Richard's administrative duties*

To the extent plaintiffs claim their rights were violated by Ricci and Richard when they were performing administrative tasks not *directly* pertaining to their roles as advocates, they are still entitled to immunity. A prosecutor's administrative acts "'enjoy[] absolute immunity if the act is done in service of an advocacy function.'" *Stockdale v. Helper*, 979 F.3d 498, 502 (6th Cir. 2020) (quoting *Safar v. Tingle*, 859 F.3d 241, 249 (4th Cir. 2017)); *see also Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (explaining that, since *Imbler,* prosecutorial immunity extends

to any activities in connection with a prosecutor's duties (citation omitted)). "So long as it is 'directly connected with the conduct of a trial,' [] administrative conduct stands behind the barricade of absolute immunity." *Stockdale*, 979 F.3d at 502 (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 344, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009)).

In Count 7, plaintiffs aver that Richard violated their rights by "falsely denying Judge Elum's November 7, 2024 video review order and appearing to eavesdrop before being connected, obstructing evidence access."[4] (Doc. No. 3, at 27–28.) In Counts 3, 4, and 12—all related to Judge Elum's finding that Kilina Jellel engaged in the unauthorized practice of law—plaintiffs appear to refer to Ricci's interactions with them at the Massillon Municipal Court. In Count 3, plaintiffs accuse Ricci of violating their Fourteenth Amendment rights by "facilitating coercion, while denying access to accurate records." (*Id.* at 24.) Count 4 includes allegations of Ricci "initiating improper contact and remaining present," including that she asked plaintiffs "'Hi, what are you doing here?' and stayed despite a conflict[.]" (*Id.* at 25.) In Count 12, plaintiffs allege a Fourteenth Amendment violation based on Ricci's "coercive presence" at the court. (*Id.* at 31.) These alleged actions were all done in service of an advocacy function.

*Stockdale v. Helper* does not change the Court's analysis. There, the Sixth Circuit held that a prosecutor was not entitled to immunity for her email communications advocating the hiring and firing of certain police officers because Helper's input on who the police department hired was not "'intimately associated with the judicial phase of the criminal process.'" *Stockdale*, 979 F.3d at 502 (quoting *Imbler*, 424 U.S. at 430). But in denying immunity, the Sixth Circuit emphasized that "no identifiable trial" in which the officers would be involved loomed when Helper's emails were

---

[4] It is unclear from the amended complaint whether plaintiffs' allegations about Richard concern his role as an advocate for the City of Massillon or his role in performing administrative tasks pertaining to his role as an advocate. Though the Court interprets plaintiffs' allegations in Count 7 (relating to "appearing to eavesdrop before being connected, obstructing evidence access" (*id.* at 27–28)) as being more like administrative tasks, as the Court has explained, Richard would be entitled to immunity in either circumstance.

sent, and that "Helper never mentioned a pending criminal case involving [the police officers] in her conversations with Fairview officials about their employment." *Id.* at 503. Unlike the emails at issue in *Stockdale*, plaintiffs' allegations regarding Ricci and Richard's administrative actions (Counts 3, 4, and 12) directly and exclusively relate to their role in the case against Beall. Thus, they are also entitled to immunity on these claims. *See Stockdale*, 979 F.3d at 502 (citations omitted).

### C. Claims Against Officers Irwin, Jackson, and Clifford

Nonjudicial officers, like clerk's office employees and victim advocates, whose official duties have an integral relationship with the judicial process, are also entitled to absolute immunity for federal law claims involving their quasi-judicial conduct. *See Foster v. Walsh,* 864 F.2d 416 (6th Cir. 1988) (finding clerk of court was entitled to immunity for issuing an arrest warrant, which was a "truly judicial act"). As explained below, the facts giving rise to all fourteen claims (Counts 1, 2, 3, 4, 5, 6, 8, 9, 12, 15, 16, 17, and 18) against Irwin, Jackson, and Clifford relate exclusively to their quasi-judicial duties in service of *State v. Beall*.

Several of these claims pertain to the administration of Judge Elum's determination (*see* Doc. No. 3-4, at 1) that Kilina Jellel engaged in the unauthorized practice of law. In Counts 2, 3, 4, and 12, plaintiffs aver that Jackson, Clifford, and/or Irwin's involvement in administering the unauthorized practice of law judgment violated their First and Fourteenth Amendment rights and caused them psychological harm. (Doc. No. 3, at 23–25, 31.) Other claims relate to pre-trial communications and preparation. Count 6 against Irwin alleges providing inadequate trial preparation and ignoring calls and voicemails (*id.* at 26–27) and Count 15, also against Irwin, alleges "secretly stripping" Kilina Jellel of her status as a victim in the case against Beall. (*Id.* at 33.) Further claims concern what occurred at trial proceedings. For example, Counts 8, 9, and 18 allege trial misconduct (*id.* at 28), privacy violations in open court (*id.* at 29), and a pattern of

deception, respectively. (*Id.* at 35.) Count 16 alleges Ricci and Irwin excluded Darlene Jellel from communications and misled plaintiffs. (*Id.* at 34.)

These claims all refer to conduct well-within the scope of Irwin, Jackson, and Clifford's official quasi-judicial duties in connection with *State v. Beall*. Accordingly, the claims against Irwin, Jackson, and Clifford are all "devoid of merit" because they too are barred by the immunity doctrine.[5] *Apple*, 183 F.3d at 479; *see, e.g.*, *Foster*, 864 F.2d at 417 (finding court clerks are immune from suit when acting in connection with the orders of a judge); *Jaiyeola v. Dorwin*, No. 22-1424, 2022 WL 16835730, at \*1–2 (6th Cir. Oct. 5, 2022) (affirming dismissal of fee-paid *pro se* complaint against federal Clerk of Court for not entering a default judgment under *Apple v. Glenn* because the Clerk was entitled to quasi-judicial immunity); *Lucas v. Moore*, 412 F. Supp. 3d 749, 753 (S.D. Ohio 2019) (finding municipal court employee was entitled to absolute immunity related to the release of plaintiff's personal information).

### D.     Claims Against Officers Dexter, Bernard, and Anderson

Plaintiffs' claim against Officers Dexter, Bernard, and Anderson must also be dismissed because, liberally construed, it lacks the legal plausibility necessary to invoke this Court's subject matter jurisdiction. *Apple*, 183 F.3d at 479–80. In Count 10, plaintiffs allege the officers violated their Fourteenth Amendment Due Process right to "Protection from Harm" by "Dexter falsely stating the offense was 'non-arrestable' despite video evidence, Bernard falsifying a report listing Dexter as arresting officer, and Anderson failing to intervene, delaying justice." (Doc. No. 3, at 29–30.) Plaintiffs further aver that the "[o]fficers viewed Blink footage showing Beall's

---

[5] Irwin, the "assigned victim advocate for the City of Massillon" (Doc. No. 3 ¶ 12), may also be entitled to prosecutorial immunity. *See* Victim Assistance Service, Stark County, Ohio (last visited June 9, 2025), https://tinyurl.com/4ntr4vjw (describing the Stark County Victim Assistance Service, for which Irwin works as a "Massillon Municipal Court Advocate[,]" as "the oldest Prosecutor based program in the State of Ohio."). *See Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020) ("We may take judicial notice of generally known information or government websites.") Because Irwin is entitled to immunity no matter how her role is defined, the Court need not consider this alternative form of immunity.

vandalism; Dexter admitted Beall's intent but claimed it was 'non-arrestable,' Bernard falsely reported an arrest, and Anderson did nothing." (*Id.*)

"There is no constitutional right to have law enforcement investigate complaints against other parties or to have a state actor report an alleged crime to a charging authority." *Butler v. Atchison Police Dep't*, No. 19-3167, 2019 WL 4640582, at *2 (D. Kan. Sept. 24, 2019). Nor is there a Fourteenth Amendment right to have someone arrested for an offense that police officers consider non-arrestable. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (finding no due process right to have someone else arrested for a crime).

The rest of the claim appears to relate to officers "falsifying" a police report. (Doc. No. 3, at 29.) This part of the claim is without merit because "the preparation or filing of a police report that is false, misleading, or incomplete, without more, does not create a right of action for damages under Section 1983." *Stocco v. Logan Francisco*, No. 24-cv-13157, 2025 WL 322222, at *1 (E.D. Mich. Jan. 28, 2025) (internal citation omitted) (collecting cases). Count 10 against Officers Dexter, Bernard, and Anderson is therefore "devoid of merit" and is properly dismissed under *Apple v. Glenn*. 183 F.3d at 479.

### E.  *Monell* Claim Against the City of Massillon

"*Monell* holds that municipalities may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). But "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Id.* Plaintiffs allege in conclusory fashion that the City of Massillon was responsible for "a pattern of misconduct by municipal officials across March 26, 2025, February 19, 2025, November 7, 2024, and earlier events reflect[ing] systemic failures in training or supervision, constituting a municipal policy or custom." (Doc. No. 3, at 30 (Count 11).) Nowhere in their amended complaint do plaintiffs adequately plead a constitutional violation

10

against any of the individual defendants. *See Hardy v. City of Flint, MI*, No. 23-1773, 2024 WL 5420940, at *3 (6th Cir. Sept. 25, 2024) (affirming district court's *sua sponte* dismissal of fee-paid *pro se* litigant's *Monell* claims for failing to allege an underlying constitutional violation). Without an underlying constitutional violation to anchor it, this claim is also "devoid of merit" and must be dismissed. *Apple*, 183 F.3d at 479.

### F. Requests for Injunctive and Declaratory Relief

In addition to seeking $10,000,000 in damages, plaintiffs request "injunctive relief halting further retaliation, surveillance, [and] interference[,]" restoring their "right to safely access and enjoy their property" (Doc. No. 3, at 27), and a declaratory judgment that "the acts and omissions" of defendants violated the First, Fourth, and Fourteenth Amendments, as well as their rights under Ohio law. (*Id.* at 26.)

Judicial, quasi-judicial, and prosecutorial immunity do not necessarily bar Section 1983 claims for injunctive or declaratory relief. *See Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 736–37, 100 S. Ct. 1967, 64 L. Ed. 2d 641 (1980) (prosecutorial immunity does not bar requests for declaratory or injunctive relief); *Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012) (judicial immunity does not bar requests for declaratory relief). A federal court, however, lacks jurisdiction to consider any claims that would effectively require the federal court to sit as an appellate court to review state-court determinations. *See District of Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Tr. Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

 "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine [] prevent[s] the district court from asserting jurisdiction." *Lawrence v. Welch,* 531 F.3d 364, 368 (6th Cir. 2008) (quoting *McCormick v. Braverman,* 451 F.3d 382, 394–95 (6th Cir. 2006)). As best the Court can discern, plaintiffs' alleged constitutional injuries arise from Judge Elum's "sealed

judgment entry"[6] (*see id.* ¶ 69) that Kilina Jellel engaged in unauthorized practice of law (*see, e.g.*, Doc. No. 3, at 23, 24, 25, 31), his order for Beall to pay Darlene Jellel (only) $99.00 in restitution (*see id.* ¶ 28), and from Irwin's judgment (apparently accepted by Judge Elum) that Kilina Jellel was not a victim in *State v. Beall* (*see, e.g., id.* at 28, 30, 31, 33). In seeking injunctive relief "halting further retaliation, surveillance, or interference by any Defendant or associated municipal entity, requir[ing] full compliance with Marsy's Law, and restor[ing] Plaintiffs' right to safely access and enjoy their property" (Doc. No. 3, at 37), and declaratory relief stating that defendants' actions in *State v. Beall* violated plaintiffs' rights "under the First, Fourth, and Fourteenth Amendments" (*id.* at 35–36), plaintiffs ask the Court for the very remedy barred by the *Rooker-Feldman* doctrine.[7]

Additionally, the *Heck* doctrine[8]—providing that a defendant cannot claim damages under Section 1983 over another court's judgment without first showing that that court's judgment has been reversed—has been extended to claims for injunctive and declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 646–48, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997) (finding the *Heck* doctrine applies to claims for declaratory relief); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at * 1 (6th Cir. May 5, 1998) (applying the *Heck* doctrine to claims for injunctive relief).

---

[6] Though plaintiffs refer to a "sealed judgment entry[,]" the record only reflects a *finding* from Judge Elum, who also referred the matter "to the Law Director for his review whether Kilina Jellel is practicing law in Ohio without a law license and may be engaged in the Unauthorized Practice of Law." (Doc. No. 3-4, at 1.) The Court notes that *Rooker-Feldman* applies to state court *judgments,* not findings. *Lawrence*, 531 F.3d at 368. But even if *Rooker-Feldman* does not bar relief for claims arising out of this factual allegation, plaintiffs' request for declaratory and injunctive relief is still "devoid of merit" because plaintiffs allege no plausible constitutional injury suffered as a result of Judge Elum's finding and referral. *Apple*, 183 F.3d at 479; *see Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) (finding there is no constitutional right to be free from accusations of misconduct, even if false). This request also lacks the "legal plausibility necessary to invoke federal subject matter jurisdiction." *Id.* at 480.

[7] Further, even if plaintiffs' amended complaint could survive *Apple v. Glenn* (it could not), this Court would likely dismiss pursuant to *Younger v. Harris*, which directs a federal court to abstain from entertaining a claim when doing so would interfere with an ongoing state proceeding. *See Doe v. Univ. of Kentucky*, 860 F.3d 365, 368–69 (6th Cir. 2017) (citing *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). Plaintiffs aver there is an "active appeal process related to violations stemming from the criminal case against Samuel E. Beall[.]" (Doc. No. 3 ¶ 23.) If plaintiffs' claims challenge a ruling that is currently on appeal in state court, the *Younger* principles would also apply.

[8] *See Heck v. Humphrey*, 512 U.S. 477, as discussed in note 3, *supra.*

Plaintiffs request injunctive and declaratory relief from Judge Elum's judgment, but do not allege that the judgment has been set aside. On this basis, their requests for injunctive and declaratory relief are also "devoid of merit" and fail to invoke the Court's subject matter jurisdiction. *Apple*, 183 F.3d at 479.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' amended complaint is dismissed without prejudice. Because the Court has determined it lacks jurisdiction over plaintiffs' federal claims, it cannot address plaintiffs' state law claims, including those arising under the Ohio Constitution or the Ohio Revised Code. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 43–44, 145 S. Ct. 41, 220 L. Ed. 2d 289 (2025) (finding a federal court loses supplemental jurisdiction over state-law claims when the federal claims that enabled removal are dismissed). To the extent plaintiffs' Section 1983 claims are based on allegations of state law violations (*see, e.g.,* Doc. No. 3, at 6 ("This is a federal civil rights action brought by [plaintiffs] under 42 U.S.C. § 1983 and the Ohio Constitution to address ongoing violations of their rights")), Section 1983 does not cover conduct allegedly violating state law. *Monroe v. McNairy Cnty., Tenn*., 520 F. Supp. 2d 917, 920 (W.D. Tenn. 2007). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: June 20, 2025

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**